**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> APEX BRITTANY MO, LP, <br><br> Debtor. | Chapter 11 <br><br> Case No. 23-11463 (CTG) <br><br> **Related Docket No. 4** |

## MEMORANDUM OPINION

The debtor, Apex Brittany MO, LP, filed a petition under chapter 11 of the Bankruptcy Code on September 15, 2023. The petition was signed by Oron Zarum, who listed his title as "Managing Member of General Partner."[1] In April 2023, however, the U.S. District Court for the Western District of Missouri had entered an order appointing a receiver over the debtor, including its operations and assets.[2] That order states expressly that only the receiver, and not the debtor's general partner, "shall have the authority and power to file a voluntary petition … under Title 11 of the United States Code."[3] For good measure, the district court expressly provided that the debtor "is hereby enjoined from … [filing] a voluntary petition under Title 11 of the United States Code."[4]

---

[1] D.I. 1 at 5.

[2] *Fannie Mae v. Apex Brittany MO LP*, No. 5:23-cv-06050 (W.D. Mo. April 26, 2023), D.I. 15. The U.S. District Court for the Western District of Missouri is referred to as the "district court."

[3] *Id.* ¶ 9; *id.* ¶ 5(e) ("The Receiver shall be vested with. . . all the powers of Borrower. . . including without limitation the sole authority and power to file a voluntary petition under Title 11 of the United States Code.").

[4] *Id.* ¶ 9.

Fannie Mae, which appears to be the debtor's largest creditor, moved to dismiss the bankruptcy case on the ground that the debtor lacked the authority to file it. The debtor opposes the motion, arguing that the district court's order was erroneous on the merits (contending that the district court improperly applied Missouri rather than Delaware law, and that no state law may deprive a debtor of access to the federal bankruptcy law protections). That argument, however, is a non-starter, as the debtor may not bring, in this Court, a collateral attack on the injunction issued by the district court.

Debtor responds by arguing that this Court may consider its arguments because the district court lacked "jurisdiction" to enter the order and injunction. That argument, however, also fails, as it is well settled that the district court's rulings on its jurisdiction are themselves entitled to preclusive effect.

**Factual and Procedural Background**

The only actual facts necessary to the resolution of this dispute is that the bankruptcy petition bears the signature of the debtor's "Managing Member of General Partner" and that the district court had entered an order on April 26, 2023 that vested in the receiver the sole authority to file a bankruptcy petition on behalf of the debtor. During the October 24, 2023 hearing on Fannie Mae's motion, both parties agreed that the Court could take judicial notice of the prior court pleadings. And both of the relevant facts are indeed properly subject to judicial notice under

Federal Rule of Evidence 201.[5] No party sought to present other evidence with respect to the motion. As such, the Court need not and does not make any factual finding beyond the two facts set forth above.

That said, the basic factual background is not disputed between the parties. That background is set forth below (without making any "finding" with respect thereto) simply to provide context for the current dispute.

To that end, the debtor is a Delaware limited partnership whose sole asset is an apartment complex located at 1601 North 36th Street in St. Joseph, Missouri, operated as the Brittany Village Apartments.[6] The debtor's petition lists Fannie Mae as holding a claim of almost $7.4 million,[7] while Fannie Mae asserts that additional amounts are due for fees and interest.[8]

In January 2023, the debtor's original lender sent the debtor a notice of demand, requiring the debtor to perform repairs to the property to avoid default on its loan.[9] In February, Fannie Mae sent the debtor a notice of acceleration of indebtedness and demand for payment, which informed the debtor of its failure to comply with the previous notice, its default under its agreement, and accelerated the full loan amount due.[10] In March, Fannie Mae sued the debtor in Missouri state court

---

[5] *See Southern Cross Overseas v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

[6] D.I. 1 at 1; D.I. 15 at 1.

[7] D.I. 1 at 8.

[8] D.I. 4 ¶ 6.

[9] D.I. 4 ¶ 4.

[10] D.I. 4 ¶ 5.

and sought the emergency appointment of a receiver over the debtor and its property.[11] In April, the debtor responded by removing the action to federal district court.[12] The district court held a telephonic scheduling conference with the parties and then heard oral argument on April 25.[13] Thereafter, the district court entered the receivership order, which, relevant for purposes of this motion, gave only the receiver the power to file a bankruptcy petition on behalf of the debtor.[14]

On September 15, the debtor filed a chapter 11 petition signed by Oron Zarum, who is listed as "Managing Member of General Partner."[15] Ten days later, Fannie Mae moved to dismiss the petition for a lack of corporate authority.[16] This Court held a hearing on the motion on October 24, 2023.

Much of the hearing was devoted to the debtor's argument that the district court lacked subject-matter jurisdiction to enter the receivership order. Because the question of the preclusive effect of an order issued by a court without subject-matter jurisdiction was not fully developed in the parties' briefs, the court invited the parties to address that issue in letters to the Court. The parties have done so.[17]

---

[11] D.I. 4 ¶¶ 8, 10; D.I. 15 ¶ 4.

[12] D.I. 4 ¶ 9; D.I. 15 ¶ 5.

[13] D.I. 4 ¶¶ 11-12; D.I. 15 ¶ 5. *Fannie Mae v. Apex Brittany MO LP*, No. 5:23-cv-06050 (W.D. Mo. April 20, 2023), D.I. 11 (the debtor appeared and was represented by counsel).

[14] D.I. 4-1, Ex. 1; D.I. 4 ¶¶ 12, 16-17; D.I. 15 ¶ 5.

[15] D.I. 1 at 5, 6-7; D.I. 15 ¶ 3.

[16] D.I. 4.

[17] D.I. 33, 34.

## Jurisdiction

The U.S. District Court for the District of Delaware has subject-matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). The dispute has been referred to this Court under 28 U.S.C. §157(a) and the U.S. District Court for the District of Delaware's standing order of reference.[18] A motion to dismiss a bankruptcy case is a core matter over which this Court may enter final judgment under 28 U.S.C. § 157(b).

## Analysis

It is well established that a court must dismiss a bankruptcy case if the party acting on behalf of a corporate entity in filing the petition lacked the authority to do so.[19] The heart of the parties' dispute is whether Zarum, as the managing member of the debtor's general partner, had the authority to file the bankruptcy petition. Fannie Mae does not dispute that as a general proposition of state law, he would have such authority. But Fannie Mae's argument is that district court's receivership order stripped him of any such authority.

Perhaps more fundamentally, however, the debtor's filing of this bankruptcy case was prohibited by the district court's injunction. And while the debtor advances a number of arguments as to why it believes the district court was wrong to enter that injunction, the law is clear that the debtor was required to raise those arguments

---

[18] Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated Feb. 29, 2012

[19] *Price v. Gurney*, 324 U.S. 100, 106 (1945). *See also In re 3P Hightstown, LLC*, 631 B.R. 205, 209-210 (Bankr. D. N.J. 2021).

on appeal from the district court's order. It may not ignore the order and then argue to this Court that the district court's ruling was incorrect. Nor is the debtor helped by its contention that the district court's order exceeded its subject-matter jurisdiction. Those arguments are now barred by the preclusive effect of the district court's ruling.

**I.   Debtor may not collaterally attack the district court's injunction.**

There can be no dispute that the district court enjoined the debtor from filing this bankruptcy case. Paragraph 9 of the district court's order could not be clearer in that regard. The debtor's principal response to that order is to advance a variety of arguments about why the debtor believes that the order was incorrect.

This Court, however, cannot and will not entertain those arguments on the merits, as to do so would be to permit a collateral attack on the district court's order. The law does not allow that. The Supreme Court explained this point in *Celotex v. Edwards*.[20] There, a defendant against which a judgment was entered had posted a bond pending appeal. After the district court's judgment was affirmed, the defendant filed for bankruptcy. The bankruptcy court entered an order, under § 105(a) of the Bankruptcy Code, barring the plaintiff from executing on the bond. The district court disagreed with the bankruptcy court's order and permitted the plaintiff to execute on the bond. The Fifth Circuit affirmed. The Supreme Court, however, reversed, pointing to the "well-established rule that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified

---

[20] 514 U.S. 300 (1995).

or reversed, even if they have a proper ground to object to the order."[21] The Court explained that it "need not, and do[es] not, address whether the Bankruptcy Court acted properly in issuing the Section 105 Injunction."[22] The point is that a party unhappy with a trial court's injunction are required to appeal from the entry of the order. "Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of law."[23]

The debtor here has done precisely the same thing. Bringing a collateral attack in a bankruptcy court on a district court's order is no less a threat to "the orderly process of law" than was the collateral attack, brought in the reverse order, in *Celotex*. And just as the Supreme Court in *Celotex* saw no reason to consider the merits of the plaintiff's challenge to the § 105 injunction, this Court will likewise decline the invitation to consider the merits of the debtor's arguments that challenge the district court's injunction on its merits.[24]

---

[21] *Id.* at 306 (internal quotation omitted).

[22] *Id.* at 312.

[23] *Id.* at 313.

[24] The Court accordingly does not address the debtor's arguments that: (1) the district court was incorrect to apply Missouri rather than Delaware law, (2) state law cannot, as a matter of federal preemption, bar a debtor from accessing the protection of federal bankruptcy law, or (3) the result of a sale in bankruptcy would lead to a substantively better result for all parties than would be obtained under a receivership. These are all contentions that could and should have been raised in a direct challenge to the district court's order. Nor will the Court consider the debtor's contention that § 543 of the Bankruptcy Code requires the receiver to turn over the debtor's assets, as the absence of a properly filed bankruptcy case would in any event be a valid defense to § 543 turnover action.

7

## II. Debtor's challenge to the district court's subject-matter jurisdiction is unsuccessful.

The debtor's response to this argument is that the district court's ruling cannot be binding on it because the district court exceeded the scope of its subject-matter jurisdiction in appointing a receiver. There are, however, two responses to this argument, each of which is sufficient to defeat it.

*First*, the Supreme Court has made clear that a court's ruling on its subject-matter jurisdiction is itself preclusive in a later lawsuit. The Court explained this point in *Travelers Indem. Co. v. Bailey*.[25] That case involved a dispute over the scope of a 1986 plan injunction (issued in the *Johns Manville* bankruptcy) that arose decades after the injunction was issued. In opposing an order finding that the injunction barred a particular lawsuit, the plaintiffs suggested that the original injunction exceeded the scope of the Court's subject-matter jurisdiction. The Court had little trouble rejecting that contention, stating that once the 1986 order "became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), [it] became res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."[26] The Court added that the order is "not any the less preclusive because the attack is on the Bankruptcy Court's conformity with its

---

[25] 557 U.S. 137 (2009).

[26] *Id.* at 152 (internal quotation omitted).

subject-matter jurisdiction, for '[e]ven subject-matter jurisdiction ... may not be attacked collaterally.'"[27]

*Second*, even if the debtor could challenge the district court's subject-matter jurisdiction in this Court, that effort would fail. The district court had subject-matter jurisdiction over the action because the matter was within the diversity jurisdiction set forth in 28 U.S.C. § 1332. That is the basis on which the debtor itself had removed the case to federal court. The debtor does not suggest that the requirements of § 1332 were not satisfied.

Instead, the debtor makes the (common) mistake of using the word "jurisdiction" when it is in fact referring only to a merits argument. As the Supreme Court has repeatedly observed, including as recently as last Term, "jurisdiction" is a word of "many, too many, meanings, and courts have more than occasionally used it to describe rules beyond those governing a court's adjudicatory authority."[28] The various arguments that the debtor advanced as to why the district court lacked

---

[27] *Id.* (citing *Kontrick v. Ryan*, 540 U.S. 443, 445 n.5 (2004)). *See also Restatement (Second) of Judgments* § 12 (setting forth narrow exceptions, none applicable here, to the principle that court's determination of its own subject-matter jurisdiction is itself preclusive); *In re Diet Drugs*, 582 F.3d 524, 553 (3d Cir. 2009); *Hodge v. Hodge*, 621 F.2d 590, 592-593 (3d Cir. 1980).

[28] *Santos-Zacaria v. Garland*, 598 U.S. 411, 421 (2023) (internal quotations and citations omitted). For example, in *Morrison v. National Austria Bank Ltd.*, 561 U.S. 247, 253-254 (2010), the Court held that an extraterritorial application of section 10(b) of the Securities Exchange Act was not jurisdictional because the relevant question was not whether the trial court had the power to *hear* the claim but whether the provision at issue *applied* to the conduct alleged. More recently, in *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 299 (2023), the Court held that § 363(m) of the Bankruptcy Code was not jurisdictional because no language in the provision purports to govern a court's adjudicatory capacity. Rather, the language addresses the circumstances in which certain relief is unavailable, and thus bears on the merits rather than subject-matter jurisdiction. *Id.*

9

"jurisdiction" to enter the receivership order, such as the contention that a Missouri court lacks subject-matter jurisdiction to impose a receivership over a Delaware limited partnership or that the Missouri receivership statute only grants courts the power to impose a receivership over property (instead of the corporate entity) are attacks on the merits of the district court's judgment. They do not bear on the district court's subject-matter jurisdiction.

Of the various arguments the debtor advances, the only one that may qualify as a "jurisdictional" is the contention that the issue of authority to file a bankruptcy case was not ripe at the time the district court ruled. Under the ripeness doctrine, a federal court may only resolve disputes that are "actual or imminent," not those that are "conjectural or hypothetical."[29] While debtor's ripeness argument is subject to preclusion for the reasons described above, the Court is not persuaded that there is anything "conjectural or hypothetical," at the time a court is entering an order appointing a receiver, about delineating the scope of the receiver's authority. Debtor's ripeness argument thus also fails on the merits.

Finally, the debtor's contention that giving preclusive effect to the district court judgment violates the due process rights of its general partner is fundamentally misguided. Whatever effect the district court's order had on the general partner's rights are indirect and derive from the general partner's relationship with the debtor. Courts enter orders every day that have indirect effects on non-parties that have relationships with the parties, without providing those non-parties with notice or the

---

[29] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

opportunity to be heard. Imagine that plaintiff A sues XYZ Corporation. The judgment that plaintiff A obtains may turn out to affect the value of the shares of XYZ Corporation held by countless public shareholders. It may affect the livelihood of XYZ Corporation's vendors and employees. But so long as XYZ Corporation itself is valid served with notice and given a fair opportunity to defend itself, no one thinks that XYZ Corporation's shareholders, vendors, and employees are separately entitled to be served with process and given the opportunity to be heard in the lawsuit. That is why the Supreme Court, in *Travelers v. Bailey*, explained that the original injunction bound not only the parties to the case but also those with whom the parties were in privity.[30] The indirect effect of the district court's judgment on the debtor's general partner is no different from the effect of a court's judgment on XYZ Corporation's shareholders, vendors, or employees. Nothing about this raises a due process concern.

---

[30] 557 U.S. 137, 152 (2009).

**Conclusion**

For the foregoing reasons, Fannie Mae's motion to dismiss this bankruptcy case will be granted. The parties are directed to settle an order so providing.

Dated: November 27, 2023

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE